UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ROSE MARIE STOUGHTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 3:18-CV-484 JD |
| ANDREW SAUL, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Rose Marie Stoughton appeals the denial of her claim for supplemental security income. For the following reasons, the Court will remand this matter to the Commissioner for further proceedings.

**BACKGROUND**

Ms. Stoughton filed her application for supplemental security income on February 24, 2015, alleging disability beginning January 1, 2009. Ms. Stoughton's application was denied initially, on reconsideration, and following an administrative hearing in May 2017 at which she was represented by counsel. Ultimately, the ALJ found that Ms. Stoughton had some severe impairments but that she had not been disabled since February 24, 2015. *See* 20 C.F.R. § 416.920. The Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final determination of the Commissioner.

**STANDARD OF REVIEW**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707

1

(7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

## DISCUSSION

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 416.920. These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Id.*; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R. § 416.920. However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. *See id.* The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Stoughton now challenges the ALJ's opinion through a variety of arguments, but the Court need only address the following issues, each of which provides a basis for remand: (1) the ALJ failed to weigh the medical opinions belonging to several of Ms. Stoughton's treating

3

sources; (2) the ALJ's RFC was inadequately supported; and (3) the ALJ impermissibly "played doctor" at step two by finding Ms. Stoughton's migraine headaches to be non-severe without relying on any medical opinions.[1]

## A. Failure to Weigh Medical Opinions

As part of his opinion, the ALJ assigned "little weight" to the opinions of Ms. Stoughton's social worker, Ms. Jillorna Uceny, and supervising psychiatrist, Dr. Dean Smith. (R. 17). The ALJ, however, made no effort to weigh the medical opinions provided by several of Ms. Stoughton's remaining treating physicians. Ms. Stoughton now contends this shortcoming requires remand. She takes particular issue with the absence of any assignment of weight to the opinions of Dr. Shivam Dubey (her treating psychiatrist) and Dr. Craig Miller (her primary care physician).[2] Because the ALJ was required to but did not explain his decision to assign these providers' medical opinions anything less than controlling weight, the Court cannot affirm his decision.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2); *see White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005).[3] Once well-supported contradicting evidence is introduced,

---

[1] Ms. Stoughton additionally maintains that the ALJ improperly assigned "little weight" to the medical opinions of her treating social worker, Ms. Jillorna Uceny, and supervising psychiatrist, Dr. Dean Smith. Given the outcome of the Court's opinion, however, the Court declines to address this issue. Ms. Stoughton is of course free to pursue this argument on remand.

[2] Ms. Stoughton also advances that the ALJ failed in the same respect as to the 2017 treatment notes from Dr. Rahila Qazi, her psychiatrist at the time. But Ms. Stoughton's argument as to this source is not well-developed. Dr. Qazi's treatment records, however, do relate to the ALJ's failure to adequately support the RFC, and so the Court will separately discuss Dr. Qazi's opinions in the context of that issue.

[3] The treating physician rule has since been abrogated, but that took effect after Ms. Stoughton filed her claim.

however, the treating physician's opinion is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to weigh. *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). Applicable here, however, if an ALJ decides not to give controlling weight to a treating physician's opinion, he must explain his reasons for doing so. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Failure to provide this explanation is cause for remand. *Id*.

The Commissioner does not contest whether Drs. Dubey and Miller qualify as treating physicians, nor does he deny the fact that the ALJ made no attempt to weigh their opinions. Instead, the Commissioner's only response is that these physicians' treatment notes do not constitute medical opinions for Social Security purposes because the notes themselves do not opine on Ms. Stoughton's functional limitations. As a result, the Commissioner argues, the ALJ did not err in neglecting to weigh these various reports because the regulations only required him to "evaluate every *medical opinion*" received. 20 C.F.R. §416.927(c) (emphasis added).

The Commissioner's position does not persuade the Court for two main reasons. First, as set forth below, many of the treatment notes at issue indeed contain explicit opinions as to Ms. Stoughton's functional limitations, and so the Commissioner's argument to the contrary is factually inaccurate. Second, the regulations do not confine the definition of "medical opinions" to conclusions on functional limitations, as the Commissioner would have it; nor do the regulations require a physician to opine on limitations—indeed, "they caution against doing so since 'disability' is a question ultimately left to the Commissioner." *Horr v. Colvin*, No. 1:13-CV-358, 2015 WL 1128622, at *3 (N.D. Ind. Mar. 12, 2015); *see also* 20 C.F.R. § 416.972(d).

"Medical opinions" are statements about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite her impairments, and physical or mental restrictions. 20 C.F.R. § 416.927(a)(1). Based on this

5

definition, there can be little doubt that Dr. Dubey's records of Ms. Stoughton's psychiatric treatment contain medical opinions. Ms. Stoughton presented to Dr. Dubey in December 2013 complaining of attention problems. (R. 257). Dr. Dubey examined Ms. Stoughton's present psychiatric health in detail, noting that she had experienced recent episodes of mania and depression during which she could not sleep. *Id.* He also noted that in the previous month, Ms. Stoughton experienced a decrease in energy, concentration, and motivation, and that she was having difficulty following detailed instructions. *Id.* Dr. Dubey then recorded his own findings regarding Ms. Stoughton's mental status, observing present paranoia, restricted affect, irritable mood, and slowed speech that was circumstantial at times. (R. 259). Based on his December 2013 assessment, Dr. Dubey diagnosed Ms. Stoughton with bipolar disorder (current episode depressed) and attention deficit disorder. (R. 260). Secondary to these diagnoses, Dr. Dubey noted that Ms. Stoughton's mental status was causing her problems at work and that she had poor coping skills. (R. 260-61). Dr. Dubey then prescribed a course of treatment that included medication, therapy, and follow-up psychiatric appointments. (R. 261). All of these recorded details constitute "medical opinions." *Horr*, 2015 WL 1128622, at *3 (finding there was "little doubt" that reports containing treating physician's assessment of claimant's symptomatic history, diagnosis, and administration of treatment plan constituted medical opinions under the regulations).

Following this initial assessment in 2013, the record reflects Dr. Dubey continued to see Ms. Stoughton roughly every four to eight weeks until March 2016. Throughout this course of psychiatric treatment, Dr. Dubey rendered additional, regular medical opinions as to Ms. Stoughton's functional limitations in maintaining attention and focus, finding her attention deficits "not controlled": "Focus is not good and she is having problems at her job in the last 1

6

month." (February 2014, R. 267); "Her focus is low and she gets easily distracted in the last 1 month." (May 2014, R. 273); "Her focus is not good." (October 2014, R. 288); "Focus is poor after noon in last 1 month, difficulty in finishing assignments, feels tired and frustrated easily …." (November 2014, R. 291); "Focus is poor, she is trying to develop a web site and she is having trouble with her focus in morning in last 1 month." (April 2015, R. 395); "Focus is poor." (June 2015, R. 398); "Focus is poor, having difficulty finishing tasks, gets frustrated, feeling tired in last 1 month." (July 2015, R. 467); "[F]ocus is poor in last 1 month." (December 2015, R. 473). All of Dr. Dubey's observations described here, both at his initial appointment with Ms. Stoughton and during her subsequent course of treatment, fit the definition of medical opinions and therefore require some assignment of weight and corresponding explanation by the ALJ.

The same can be said for Dr. Miller's treatment notes regarding Ms. Stoughton's migraine headaches, an impairment the ALJ deemed non-severe. Ms. Stoughton presented to Dr. Miller, her primary care physician, three times in September 2014 with recurring, worsening migraine headaches. (R. 363-72). Dr. Miller recorded observations about Ms. Stoughton's symptoms and their severity (such as nausea, vomiting, severe pain, and sensitivity to sound), diagnosed her with migraines, and prescribed a course of treatment that included preventative medication. *See id.* Dr. Miller noted that Ms. Stoughton's migraines improved both in December 2014 and March 2015, although his migraine diagnosis remained on record and he continued Ms. Stoughton on a course of preventative medication. (R. 345, 348, 353). In November 2015, however, Dr. Miller reported that Ms. Stoughton experienced an increase in headaches, and he placed her back on a regimen of migraine medication. (R. 416-19). In April 2016, Dr. Miller again reported that Ms. Stoughton's migraines had returned—this time, without nausea or vomiting, but with sensitivity to light. (R. 407). As with the opinions contained in Dr. Dubey's

7

assessments, Dr. Miller's records qualify as "relevant medical evidence and constitute a medical opinion." *Horr*, 2015 WL 1128622, at *3.

Having determined that both Dr. Dubey and Dr. Miller supplied medical opinions, the ALJ erred by not even attempting to assign weight to their assessments—let alone controlling weight—without explanation. *See* 20 C.F.R. § 416.927(c); *Scott*, 647 F.3d at 740 ("[E]ven if there had been sound reasons for refusing to give Dr. Tate's assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit."). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citations omitted). Indeed, many of these considerations favor crediting the assessments of Dr. Dubey and Dr. Miller at least to some extent. Both doctors saw Ms. Stoughton on a regular basis, with Dr. Miller serving as her primary care physician and Dr. Dubey as a mental health specialist. Moreover, Ms. Stoughton saw both these doctors over the course of several years, lending further credibility to their opinions. Yet, it is not apparent that the ALJ considered any of these factors; instead, he simply ignored his obligation to determine how much weight to afford these physicians' opinions altogether. This shortcoming requires remand. *See Scott*, 647 F.3d at 740 (remanding where ALJ neglected to explain the degree of weight to be assigned to claimant's treating physician's medical opinions); *Horr*, 2015 WL 1128622, at *3 (citing *Scott* and concluding the same).

**B.     Unsupported RFC**

Ms. Stoughton additionally argues that the ALJ failed to support his RFC with substantial evidence, and the Court agrees.[4] In making a proper RFC determination, the ALJ must consider *all* of the relevant evidence in the record, even as to limitations that are not severe. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to her findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski*, 245 F.3d at 888. Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

Here, the ALJ determined that Ms. Stoughton could perform routine, repetitive, and simple tasks because she "is able to understand, remember, and carry out instructions" related to those tasks. (R. 15). In reaching this conclusion, the ALJ twice relied on his observation that Ms. Stoughton "has often demonstrated no problems" with attention and concentration, citing Dr. Dubey's treatment notes in support. (R. 16, 17).[5] Granted, Dr. Dubey's records confirm that Ms. Stoughton presented with good or controlled focus on at least some occasions, but the ALJ's

---

[4] Although, the Court is not persuaded by one of Ms. Stoughton's related sub-arguments, that the ALJ made no provision for her non-severe migraines in the RFC. [DE 16 at 22] To the contrary, the ALJ explicitly stated that, "in consideration of the claimant's migraines, the undersigned finds her work environment should be no more than moderately noisy," and he included that environmental restriction in the RFC itself. (R. 12, 15).

[5] The ALJ relied on the same observation a third time, when assessing Ms. Stoughton's limitations in the area of concentration, persistence, and pace at step three: "The claimant has often been noted to have no problems with attention and concentration." (R. 14).

analysis completely overlooks the eight distinct, recurring instances between February 2014 and December 2015, detailed above, in which Ms. Stoughton could not maintain attention, focus, and concentration. (R. 267, 273, 288, 291, 395, 398, 467, 473). Elsewhere, the record reflects that Ms. Stoughton's struggles with concentration and focus continued even into January 2017, when her then-psychiatrist Dr. Rahila Qazi noted that "she continues to struggle with attention" and "has been having a very hard time staying organized and cannot get things done." (R. 596). Again, however, the ALJ did not consider this evidence.

While the Court realizes that an ALJ need not discuss every piece of evidence in the record in rendering his decision, the ALJ cannot "cherry-pick" details from a physician's report that support a finding of non-disability while ignoring facts that run counter to his conclusions. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("It is not enough for the ALJ to address mere portions of a doctor's report."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Nor can he ignore an entire line of evidence that undermines his disability determination. *Zurawski*, 245 F.3d at 887. Yet, that is precisely what the ALJ committed here; he concluded that Ms. Stoughton could perform work-related tasks at a particular level while ignoring the treating physicians' reports that Ms. Stoughton's deficits in concentration, focus, and attention, were routinely not controlled. This, too, requires remand.

C.    **Step Two - Migraines**

At step two, the ALJ determined that Ms. Stoughton's migraines did not qualify as severe simply because "she reports she only gets headaches once in a while, and they are managed using only over-the-counter pain medication." (R. 12). The ALJ's reasoning here does not suffice

because he reached his conclusion without relying on any expert opinion whatsoever. "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding where ALJ failed to submit new MRI to medical scrutiny and instead played doctor by simply summarizing the test results in "medical mumbo jumbo").

Although not cited by the ALJ's opinion, Dr. Miller's treatment records from his March 12, 2015, appointment with Ms. Stoughton note that she "[g]ets headaches every once and [sic] a while" and that she recently managed a headache by taking Tylenol. (R. 345). But even assuming the ALJ intended to rely on this assessment, his analysis would still be lacking for reasons similar to those discussed above. As detailed herein, *after* March 2015, Dr. Miller observed Ms. Stoughton to experience worsening, more frequent migraine headaches in November 2015 and April 2016. (R. 407, 416). In response to this uptick in migraine headaches, Dr. Miller *prescribed* Imitrex and considered re-initiating propranolol. (R. 411, 419). These are not over-the-counter medications. Thus, to the extent the ALJ relied on Dr. Miller's March 2015 notes (again, any such reliance was without citation) to determine that Ms. Stoughton's migraines were not severe, he failed to support his analysis with the requisite "logical bridge" because he overlooked more recent opinions from the same physician indicating that, indeed, Ms. Stoughton experienced migraines more frequently than "once in a while" and required prescription medication to keep her symptoms in check. *Terry*, 580 F.3d at 475. The ALJ's flawed analysis at step two warrants remand.

## CONCLUSION

The remedy for the ALJ's shortcomings is further consideration. And so, for the reasons stated herein, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: July 19, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court